Your Honor, this case centers on a lawsuit that I filed back in September 2004, which principally focuses on the idea that Mr. McAnally was wrongfully prosecuted by the Clark County District Attorney's Office in Las Vegas. Judge Hicks, in his order granting the county's motion to dismiss, focused his main argument on the claim that this lawsuit was barred by the principles of res judicata from a previous lawsuit I had with Mr. McAnally. It's our contention that this is not the case. The prosecution itself by Clark County, how we contend it was wrongful, how we contend it was not supported by fact, and indeed, that Mr. McAnally violated not only no county policy or written policy or verbal policy, but also violated no Nevada law. That was the focus of that complaint. Now, Judge Hicks, in his order granting the motion to dismiss, said, well, wait a minute. You've got a Section 1983 claim here now in this case. You had one before, back in 2002 when I granted summary judgment on McAnally 1. If you look, Section 1983 is a vehicle. It's a means to assert Federal claims. It's not a Federal claim itself. It's not a constitutional violation itself. Federal constitutional claims. I'm sorry, Your Honor. Federal constitutional claims. Exactly. Well, in McAnally 1, I asserted in that complaint claims that were more akin to employment discrimination. There was an equal protection claim. There were First Amendment claims, things of that type. If you look at the complaint that I drafted and filed in September of 2004, that complaint under the Section 1983 allegations centers on those constitutional amendments that affect criminal prosecutions, Fourth, Fifth, Sixth Amendment, Fourteenth Amendment. The only duplicative constitutional claim that's referenced in McAnally 1 and this case, we'll call McAnally 2, was the equal protection claim. That's the only constitutional claim that is identical. Go ahead. I'm sorry. Counsel, do you have a two-year statute of limitations? Yes, sir. How do you get around Wallace v. Cato? It's a 2007 by the Supreme Court that says that claims must be filed within two years even if you think you have a Heck v. Humphrey bar. Well, in this case, the wrongful prosecution claim under Nevada law, under Lamantia v. Radice, cannot be filed until the proceedings have terminated in the person's favor. In this case, Mr. McAnally's criminal case, I got it dismissed on a writ of habeas corpus in November 2002. I filed this lawsuit September 2004. So it was short of the two years. It was within the two-year time frame to assert a wrongful prosecution claim. That was something that Judge Hicks was focusing on in his order that I should have somehow brought this claim forward in the first case. I thought that most of your complaint went to the question of investigation rather than the prosecution itself. Well, that's If it's prosecution itself, then you're going to have trouble under Nevada's absolute immunity rules. If it's the investigation, then you're clearly outside of your two-year statute of limitations. Well, the prosecution certainly, you know, Embler v. Prockman, I was going to get to that. But, of course, it does provide a narrow exception to attack the prosecution if we can show that the prosecutors functioned in the early stages of the case. And that's what this is about. In the early stages of this case, the district attorney's office in Clark County knew or should have known that there was no criminal violation. Their own investigation should have revealed that. I understand what you're saying. But if mistakenly they investigate and then they indict your client, they make mistakes. I mean, they're not perfect. But why isn't that part of the immunity there granted if there is, in fact, as there was here, McAuley was indicted? I don't think the indictment itself absolves the district attorney's office with the absolute immunity defense. He shouldn't even have gotten to that point of an indictment. That's the whole focus of this lawsuit. I understand that your position is they made a mistake. But that's not the question. The question is, do they have immunity? They have qualified immunity for the purposes of this case. Because why? Well, because under the Embler standard, I mean, I believe a qualified immunity defense, like under Harlow v. Fitzgerald, is if someone acts in derogation to your constitutional rights and they knew or should have known that that action or conduct would impact negatively someone's constitutional rights. But that qualified immunity goes if they're not prosecuting. It's investigative type, filling out an affidavit for a warrant of search. Here they ended up in an indictment. That is, the end result of all of this was an indictment. Why doesn't that put them into absolute immunity? Because during the early stage, once again, during the early stages of this case, the district attorney's office knew, knew there was no criminal violation, but yet still went forward with this prosecution. But what you're categorizing as the early stages of the case. I'm sorry, Your Honor? What you're categorizing as the early stage of the case, in fact, was the investigatory stage of the case, right? When the DA's investigator was interviewing officials with the building department. So here's where I see sort of the catch-22 of this case, and maybe you can explain how you get around this. Race judicata probably immunizes everyone for the pre-prosecution activities. The investigatory activity is purely investigatory, okay? I accept your argument that Nevada law, malicious prosecution doesn't occur until you have a judgment of acquittal or it's dismissed. But, I mean, so far so good. But your entire defense to absolute immunity then is that it happened pre-prosecution, which is probably covered by race judicata. That's where I see the problem with your theory. So tell me how you sort through all of those and make sense. Well, when I filed this case, I had read through Imler v. Prockman, the U.S. Supreme Court case, which I think gave the foundation for this whole theory, this idea of suing a prosecutor. If taking what you're saying is true, then there could never be a wrongful prosecution-type case against a district attorney. If you're saying that the entire, from the very beginning to the end, there's absolute immunity, I don't think that's what Imler is saying. What I'm saying is this. I mean, I think Wallace v. Cato throws the wrench into this particular case because it required you to file, and you did file. So you've got race judicata, which is unique to this case, not any other, and the district court said no pre-prosecution. Investigation is out. You could have filed. So far so good. And you say, well, no, I've got a malicious prosecution claim. But then as we describe it, it seems to be based on investigation and not post-initiation of prosecution. Is that what we're talking about here? Well, it's the role of the district attorney's office during the investigation phase of the case before they filed that first grand jury indictment in May of 1999. That's really the focus of the case. But I could not raise that claim under Nevada law until I had the favorable outcome, which I had November 5, 2002, when the state court judged throughout the criminal case. And that was the basis of then about a year and a half later filing the wrongful prosecution claim. I would just, to reserve a little time, on the issue of race judicata, I understand, of course, where Judge Hicks is coming from, but I view these claims are distinct claims. They are, granted, as I said in my brief, they are from a similar transactional nucleus of facts. There's a core group of facts here that are the same. But this claim, wrongful prosecution, could not be brought forth until after I had that favorable decision from the state court. Judge Hicks granted summary judgment on the first case. We had the arguments July 2002. He granted it September 2002. I didn't have the favorable ruling until November of 2002. I was already up at the Ninth Circuit on the first case. I had already filed a notice of appeal on that first case, which was that appeal was denied by the court. How do you square your argument with the Supreme Court case of Wallace? Justice Scalia's opinion is pretty strong. How do you distinguish it? As I stand here, the overall principles of Wallace escape me. So I cannot distinguish that. I'm sorry, Your Honor. I cannot. I stand by what I've argued today with the brief. And on the Nevada Supreme Court case, which, in fact, the Court had pointed me to, Edgar v. Wagner, Nevada State case, which I think is also a vehicle that allows for this type of prosecution. I mean, this type of a civil case. In fact, it seems like it's rather well on point on the Nevada Supreme Court. Does Edgar only go to your State claims? Let's suppose that we thought that your 1983 claims were barred by res judicata. The 1983 claims that I've asserted in this complaint were never asserted before and could not have been asserted on the first case. Let me give you the presumption again. Let's suppose that the 1983 claims are barred by res judicata. Okay. Does Edgar preserve your State malicious prosecution claims? I believe it would. I believe it would. If this Court holds that I cannot go forward on the 1983, the State court claim was timely filed within the malicious prosecution claim was timely filed in Nevada State law, I suppose this case under appended jurisdiction could be remanded to the State court and I would just go on that one State claim. Doesn't that get you where you want to go anyway? I'm sorry, Your Honor? Doesn't that get you where you want to go anyway? Probably does, but I have concerns. I mean, I'd rather stand in the Federal Forum, obviously, on this type of claim. I'll reserve the few seconds I have left. Thank you, Your Honors. Good morning, Your Honors. My name is Gloria Navarro, and I'm a Deputy District Attorney in the Civil Division. I represent Clark County, the appellee. As we begin every one of our conferences, the first person to speak softly, we remind that the hearing in this conference room is very poor, and even though you have a microphone, you almost have to shout to be heard, so keep your voice up. I'm only picking on you because some other people are going to be talking today, too. Our first attorney was excellent. I heard everything he said, so come right at me. In this room, too, it helps if you move the mic a little closer, too. Yeah, there you go. Okay. Is that better? Yes. Okay. Thank you, Jed. I'm sorry. The Court did ask us to take a look at Edgar Wagner and to figure out if there was any significance to this particular case. So I went ahead and looked at it, and it was clear to me that it was significantly different from the case that we have here. In the Edgar case, the District Attorney is actually assisting the wildlife agent in preparing an arrest warrant. That's clearly an investigatory conduct. But in our case, the District Attorney was actually presenting a case to the grand jury, and that is traditionally a prosecutorial function, which is acting as an officer of the court. In Mr. McAnally's complaint, he never mentions investigation in regards to the defendant. He never makes any allegations that there is an investigatory misconduct by the District Attorney, and he never alleges that the District Attorney himself or herself in this particular case was participating in the investigation. Before we get too far into the facts, would you help me out with the theory of Edgar? Let's start with where Judge Bybee left off. Let's assume that the 1983 cases are out, and we're just focused on malicious prosecution under Nevada law. Edgar seems to allow a pre-prosecution, a pre-initiation of complaint claim based on malicious prosecution and investigation. Is that the way you read Edgar? Yes, I agree that if the District Attorney is not functioning as a traditional prosecutorial role and is instead doing something that perhaps an investigator would do, then clearly that falls outside of the prosecutorial immunity and instead is only protected by the qualified immunity that, say, a police officer would have. That is a matter of Nevada state law. So the only question then here is whether or not the actions qualifies what the Nevada courts regard as investigatory or not, right? Correct, Your Honor, and the first time that Mr. McAnally's counsel brings up that this was an investigatory function as opposed to a prosecutorial one is after I filed my motion to dismiss on the grounds of prosecutorial immunity. That is the first time that's ever mentioned. It's nowhere in the entire complaint. You sharpened his theory. It often happens. But your argument basically is that there's nothing in the complaint that's alleged that's outside the prosecutorial process, and by that you mean presentation to the grand jury. That's correct, Your Honor, and that's exactly the kind of manipulation of facts that the U.S. Supreme Court, very recently after we provided our briefs in January of 2009 in a unanimous decision, the U.S. Supreme Court in Van de Kamp v. Goldstein stated that they disapproved of this kind and they didn't use the word manipulation like I would. They said that it was a cleverly styled complaint. Same idea in that particular case. That was a 1983 theory that they were examining, not Nevada tort law. I mean, there is a difference. Yes, but the idea is the same as far as the absolute immunity was expanded in that Supreme Court case from a situation where the complainant was clever enough to style it so that the prosecutorial conduct was administrative. Those were the buzz words, as in here you might use investigative. And the Supreme Court said, you know, we're not going to do that. That eviscerates Embler. We're looking at whether or not this prosecutor actually did anything as a prosecutor or outside of that prosecutorial role, regardless of what word she used. I don't think, with all due respect, I don't think Goldstein abrogated the prior ruling that if a prosecutor acts as an investigator, then the prosecutor may be liable as an investigator, even under federal law. I mean, if a prosecutor goes in and participates in a raid, which prosecutors sometimes do, I mean, that's certainly outside the scope of the prosecution. It sure is, and we discourage that. They don't listen to us because it's exciting, but I agree. I don't think Goldstein changes anything on that. And it seems to me the only question is whether or not he's sufficiently alleged in investigation here. Correct. And you look at the facts in the complaint, and there's just no mention of investigative at all. Well, actually, in paragraph 10, he says the defendant proceeded to seize, which would be your – which would be a little different from a prosecutorial function. Arrest, prosecute would come within that. And down at the last line on that, based on the foregoing allegation, the defendant and his agents are not entitled in any form to absolute immunity for engaging in wrongful prosecution as absolute immunity is inapplicable to a wrongful investigation. Right. We did use the word. Well, what he's referring to there, though, is from – because he's lumping together. There's three different investigations. The first one was by the building department. This particular man is a building inspector. The second investigation was by the human resources division for the wrongful termination. Then it's referred to the district attorney's office for prosecution. That's when the investigators speak to Mr. McAnally. He was not seized. Well, let me back up. The documentation that he's alleging is seized was taken by the building department from his office, which is a building department office. Now, the district attorney hadn't come in yet. That was back in phase one. The DA comes in on phase number three. The interview of Mr. McAnally is what they're saying was a seizure of types because he was not Mirandized. But he was not in custody. He had a union representative there. We don't really have any findings from the district court on these matters, do we? I mean, you're obviously very, very familiar with the facts, and you're sort of beyond what we have in front of us because Judge Hicks dismissed all of this on the basis of absolute immunity and thus didn't need to get to any of these questions. We didn't have to apply the sort of nuanced view that you've taken today. Right. Well, Judge Hicks was the judge on the previous case, on the first McAnally one, on the first case, and that one went all the way through to summary judgment. So Judge Hicks was very familiar with these particular facts because all the discovery had been done at that point. Right. I'm sorry. Go ahead. Your theory doesn't allow compartmentalization, so I'm just wondering how far it stretches. If I understand correctly, your position is so long as there's an indictment at the end of the road, there's absolute immunity. Is that true in all cases? That is, no matter how bad, how wrongful, how terrible an investigation might be or how willful or how criminal, as long as you can slip in and get an indictment, then it's king's X for anything that happens prior to that. Does the law really stretch that far? Well, the way that I was looking at the Lamontia case on the malicious prosecution, and it states that there's four factors in order to have a viable malicious prosecution. And one of those factors, one of the four factors is want of probable cause. When you go to a grand jury and you obtain an indictment, that is, in effect, a probable cause ruling, that probable cause exists. So the grand jury is the only protection a citizen has against wrongful investigation. It is an independent fact finder. And, of course, in a grand jury, only the prosecutor speaks, and sometimes the grand jury indictments do not pan out in the ultimate case. But your position is so long as the grand jury indicts, then all of the investigation is covered with absolute immunity. No, that's not my position because I don't think that the prosecutor had a role in the investigation in this particular case. So I wouldn't stretch it back that far. I wouldn't say that there's absolute immunity for investigative functions. Right. To follow up on Judge Bybee's question, which I think may answer in part Judge Wallace's question, the district court only considered res judicata. We're trying to work our way through the facts here and decide whether or not he's sufficiently alleged and whether or not there's a base in the record to show that the prosecutor has actually acted in an investigatory capacity. Isn't the district court in the best position to do that? Because the district court just wasn't presented with that question. Shouldn't we remand? If we have doubts, shouldn't we remand and allow the district court to analyze that in the first instance? Well, the district court did address prosecutorial immunity in its order. We didn't have an oral argument. We just submitted the motion to dismiss and the opposition in the reply. No, I agree that the district court's decision was confined to absolute immunity. And it seems like Edgar says, well, if the prosecutor acted as an investigator, then qualified immunity applies, not absolute immunity. And the only question here is whether or not the actions of the prosecutor could be characterized as investigatory or not. You say no. He says yes. Is that for us to decide or the district court? I think that you look at the four corners of the complaint itself and whether or not there's sufficient facts there that allow you to determine whether it's an investigatory or prosecutorial function that's being alleged. Well, when he alleges investigatory function, do we take him at his word or? And that's why I look at Van de Kamp as an example of when someone cleverly styles a complaint, you really have to look at the function of what's being alleged. There's no allegation that the DA was involved in the investigation and there wasn't a DA involved in the investigation. Okay. I think we have your argument at hand. Any further questions of the panel? Okay. Thank you, counsel. Thank you. I've never been accused of being clever, but I'll run with it. Take a look at the excerpts of record in this case, pages 8 and 9. Your Honor, you pointed out in paragraph 10, if you read it in its entirety, it has been alleged in the complaint, which is what you review on a 12B6 motion about the defendant's investigation and the agents of the defendant. We're talking about Clark County here. That covers the prosecution, the investigators, the whole gamut. It's all right there in paragraph 10. Judge Hicks was put on fair notice that that's exactly what I was alleging in this complaint. It's right there in that entire paragraph. So it is sufficiently put forth in this case. And, you know, I was actually the attorney, almost out of time, on the criminal case. And, you know, though it's outside the record, the district attorney did participate in the investigation before the first grand jury indictment. I know it. And, of course, this is something that you can't get into. You're just saying that. You expect to get into it. In this case, you expect to prove it. I know I can prove it. But I can't do it unless I can go back and do some basic rudimentary discovery, including a deposition of the DA investigator and the DA, and I can prove this case. I know it. Okay. Thank you both for your arguments. They've been very helpful. The case just heard will be submitted.
judges: Wallace, Thomas, Bybee